[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 27, 2005
THOMAS K. KAHN
CLERK

No. 05-11843
Non-Argument Calendar

_____

D. C. Docket No. 04-00262-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID WILLIAM SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 27, 2005)

Before BLACK, HULL and PRYOR, Circuit Judges.

HULL, Circuit Judge:

David William Scott appeals his 135-month sentence imposed after pleading

guilty to: (1) use of an interstate facility to entice a minor for the purpose of sexual activity, in violation of 18 U.S.C. § 2422(b); (2) traveling in interstate commerce to engage in a sexual act with a person under the age of 18, in violation of 18 U.S.C. § 2423(b); and (3) crossing a state line with intent to engage in a sexual act with a person under the age of 12, in violation of 18 U.S.C. § 2241(c).  On appeal, Scott argues that the imposition of a sentence of 135 months' imprisonment, at the low end of the advisory Guidelines range, was unreasonable.  After review, we affirm.

## I. BACKGROUND

### A.     Guilty Plea

Scott pled guilty to the above offenses without a plea agreement.  During the plea colloquy, the government set forth the following facts, which Scott admitted as true.

In February 2004, FBI Agent Steve Paganucci, operating undercover, joined an online message board.  The purpose of the message board was to allow adults with children to meet other adults for the purposes of arranging and having sex with children.  Agent Paganucci posted a profile indicating that he had a six-year-old boy and a four-year-old-girl.  The day that Agent Paganucci posted his profile, Scott sent an e-mail to Agent Paganucci.

Scott and Agent Paganucci engaged in e-mail correspondence over the next

2

couple of months. In e-mail correspondence, Scott indicated that he wanted to have sex with Agent Paganucci's six-year-old boy and four-year-old girl. Scott explained that he had a niece that he was "working on," specifically stating, "Yeah, if you can get them trained young enough, they don't talk, but as I said, I wasn't even in the state for the first five years, didn't have much of a chance." Scott also stated in an e-mail, "A thought I had last night but forgot to include, I have discovered that a good way to make friends with small ones, (and most big ones for that matter, . . .), is to bring them gifts . . . Let's [sic] them know you are a friend and you are interested in them, so what would you recommend?" Agent Paganucci recommended stuffed animals.

On April 17, 2004, Scott traveled from his home in Tennessee to a prearranged meeting place in Marietta, Georgia, where he was arrested. A search of his car yielded two stuffed animals and sexual paraphernalia.[1] A search of his home computer yielded one image of child pornography.

**B.    The PSI**

The Presentence Investigation Report ("PSI") detailed more of the e-mail correspondence between Scott and Agent Paganucci, who posed as the father of the

---

[1]The search of Scott's car yielded sexual paraphernalia, including whips, chains, ropes, clothes pins with wax tips, condoms, lubricants, knives, ankle and wrist restraints, and other sexual paraphernalia.

two children. According to the PSI, Scott asked Agent Paganucci how far the two children were willing to go, and the FBI agent responded that he had sex with both of his children. In March 2004, Scott sent an e-mail to Agent Paganucci in response to a proposed plan of action. Scott stated, "Well, that's all up to you. Leave me to it, I'll fill both 'em up in all locations . . . . More than once, time permitting . . . . You give me what you're cool with, and I'll stick to it." After Scott indicated that he preferred girls, Scott and Agent Paganucci agreed that Paganucci would bring only the female child to meet Scott at first. After Agent Paganucci indicated that he wanted his daughter done hard, Scott indicated that he was excited about getting to "bang hard" on a four-year-old girl.

The PSI suggested a base offense level of 27 for each of the three counts of conviction. See U.S.S.G. § 2A3.1(a) (2003). The PSI increased the offense level for each count by: (1) four levels under U.S.S.G. § 2A3.1(b)(2) because the children had not attained the age of twelve; (2) two levels under U.S.S.G. § 2A3.1(b)(6)(B) because the offense involved the use of a computer; and (3) three-levels under U.S.S.G. § 3D1.4 to account for the multiple counts and offense levels. Thus, the PSI recommended an adjusted offense level of 36 for each of the three counts of conviction.

Finally, the PSI suggested a three-level reduction in each count for

4

acceptance of responsibility under U.S.S.G. § 3E1.1. With a total offense level of 33 and a criminal history category of I, Scott's Guidelines range was 135-168 months' imprisonment.[2]

## C.  Motion for Downward Departure

Prior to sentencing, Scott filed a written motion for a downward departure pursuant to U.S.S.G. § 5K2.0. Scott contended that the following factors, individually and collectively, warranted a downward departure: (1) a psychosexual evaluation by the Behavioral Medicine Institute ("BMI") (the services of which were retained by Scott) found that Scott was not a significant risk to children in the future, Scott was unlikely to attempt sexual interaction with children in the future, his conduct stemmed from depressive symptoms and interest and practice in fetishistic sexual activities, Scott did not meet the DSM-IV-R diagnosis for pedophilia, and, in testing, Scott did not show sexual interest in young boys or young girls; (2) Scott presented extraordinary family responsibilities, including caring for his father, who suffered from a degenerative heart disease; (3) Scott had been attacked in jail while in pre-trial custody because of the charges against him,

---

[2]The statutory maximum sentences for each of the three counts are as follows: (1) 360 months' imprisonment for Count One (use of interstate facility to entice a minor for the purpose of sexual activity); (2) 360 months' imprisonment for Count Two (traveling in interstate commerce to engage in a sexual act with a person under the age of 18); and (3) life imprisonment for Count Three (crossing a state line with intent to engage in a sexual act with a person under the age of 12). See 18 U.S.C. §§ 2422(b), 2423(b), and 2241(c), respectively.

and, since the attack, he had been in solitary confinement; (4) the requirement that he register as a sex offender upon his release from custody would diminish his ability to find employment; and, (5) in a similar case in which another defendant was found not to meet the diagnosis for pedophilia, another district court in the Northern District of Georgia departed downward and sentenced that defendant to probation.

**D.    Sentencing**

At the March 3, 2005 sentencing hearing, Scott presented witnesses, including family and friends, and further argument in support of his motion for a downward departure under U.S.S.G. § 5K2.0.  Additionally, Scott requested that the district court sentence him below the advisory Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a).

As to the § 3553(a) factors, Scott first argued that a variance below the Guidelines range was appropriate in light of the nature and circumstances of the offense.  See 18 U.S.C. § 3553(a)(1).  Specifically, Scott submitted that: (1) there was no real victim because the children were fictitious; (2) there was no mention in the e-mail correspondence between Scott and Agent Paganucci that Scott intended to use the sexual paraphernalia found in his car; (3) Scott met Agent Paganucci in a public place where there could be no sexual contact and which would give Scott

6

ample time to change his mind; and (4) at one point there was a break in the contact between Scott and Agent Paganucci, and the Agent reinitiated contact instead of Scott.

Scott next argued that a variance below the Guidelines range was appropriate in light of the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). Specifically, Scott asserted that he: (1) was "saveable" and not a danger to children in the future; (2) did not meet the definition of a pedophile; (3) accepted responsibility for his actions; (4) was depressed when he engaged in the e-mail correspondence with Agent Paganucci; (5) had the love and support of his family and friends; and (6) had no criminal history.

Scott also contended that a variance below the Guidelines range would reflect the seriousness of the offense, provide just punishment, and provide adequate deterrence. See 18 U.S.C. § 3553(a)(2)(A), (B). Specifically, Scott argued that there is a punishment aspect to the requirement that Scott register his name with the state as a convicted sex offender such that less incarceration is required to punish and deter future illegal conduct.

Finally, Scott claimed that under § 3553(a)(2)(D), the district court must consider whether the sentence provides the defendant with any necessary treatment, and in this case Scott needs counseling, which could be afforded to Scott

7

on supervised release.

After considering Scott's arguments, the district court denied Scott's motion for downward departure pursuant to U.S.S.G. § 5K2.0. The district court then adopted the factual findings and statements in the PSI, including Scott's offense level, criminal history category, and Guidelines range of 135-168 months' imprisonment.

As to the § 3553(a) factors, the district court then acknowledged that pursuant to United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), the Guidelines were no longer mandatory and that it had "considered the argument made by counsel in that regard." The district court also noted that Scott's counsel had done "those things that might lessen [Scott's] sentence in this case." Additionally, the district court stated that it considered the age of the child, as follows:

> Before coming to this Court, I was on the Superior Court in Dalton, Georgia for twenty years and I sentenced a lot of child molesters, and over the years I learned to take a lot of things into consideration in those cases; all the obvious things that you would normally take in consideration, but also take in consideration the age of the child, which makes an impression on me in this particular case.

Ultimately, the district court declined to sentence Scott below the advisory Guidelines range. Specifically, the district court sentenced Scott to 135 months' imprisonment, a sentence at the low end of the Guidelines range. The district court

8

stated that a sentence at the low end of the Guidelines range "meets the goals set forth not only under the guidelines but in Section . . . 3553."

Scott timely appealed. On appeal, Scott does not raise any issue under U.S.S.G. § 5K2.0, and accordingly any challenge under that section is abandoned. See Lambrix v. Singletary, 72 F.3d 1500, 1506 n.11 (11th Cir. 1996). Thus, this appeal does not involve a challenge to the application of the Guidelines or the calculation of the applicable Guidelines range. Rather, this appeal involves only review for reasonableness of a 135-month sentence, which was within a correctly-calculated Guidelines range of 135-168 months' imprisonment.

## II. DISCUSSION

Before the United States Supreme Court's decision in Booker, we reviewed departures from the mandatory Guidelines for reasonableness. See United States v. Winingear, – F.3d – , 2005 WL 2077087, at *4 (11th Cir. Aug. 30, 2005) (citing pre-Booker cases).[3] "That review required us to determine whether the sentence imposed by the district court was reasonable in the context of the factors outlined in [18 U.S.C. §] 3553(a)." Winingear, 2005 WL 2077087, at *4.

"Following Booker, these factors continue to guide our review: 'Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.

---

[3]See, e.g., United States v. Blas, 360 F.3d 1268, 1274 (11th Cir. 2004); United States v. Melvin, 187 F.3d 1316, 1322 (11th Cir. 1999).

Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.'" Winingear, 2005 WL 2077087, at *4 (quoting Booker, 125 S. Ct. at 766). The factors in § 3553(a) include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need to protect the public; and (5) the Guidelines range. See 18 U.S.C. § 3553(a).

On appeal, Scott argues that his sentence of 135 months' imprisonment was unreasonable for several reasons, which we discuss in turn.

## A.     The District Court Considered the § 3553(a) Factors

Scott first argues that the district court failed to consider all of the reasons for a lesser sentence advanced by Scott. Scott contends that because the district court did not specifically mention the grounds for variance that Scott argued and did not specifically address and analyze each of the § 3553(a) factors, that "necessarily means it refused to consider them." We disagree.

First, post-Booker, this Court has noted, albeit in dicta, that in reviewing sentences for reasonableness, we would not require that the district court recite a laundry list of the § 3553(a) factors. See United States v. Robles, 408 F.3d 1324, 1328 (11th Cir. 2005) ("Even if Robles was sentenced post-Booker and we were

10

reviewing for reasonableness, we would not expect the district court in every case to conduct an accounting of every § 3553(a) factor, as Robles suggests, and expound upon how each factor played a role in its sentencing decision.").

Likewise, in pre-Booker sentencing cases, which involved consideration of the § 3553(a) factors in motions to reduce a sentence, this Court explicitly stated that a district court need not specifically mention each § 3553(a) factor. See, e.g., United States v. Eggersdorf, 126 F.3d 1318, 1323 (11th Cir. 1997) (reviewing defendant's motion to reduce sentence and stating that "when – as here – the record shows that the district court considered the pertinent section 3553(a) factors, the district court does not abuse its discretion in declining to detail its determinations"); United States v. Brown, 104 F.3d 1254, 1256 (11th Cir. 1997) (reviewing defendant's motion to reduce sentence and stating that "[a]lthough the district court did not present particular findings on each individual factor listed in 18 U.S.C. § 3553, the court clearly considered those factors and set forth adequate reasons for its refusal to reduce Brown's sentence"); United States v. West, 898 F.2d 1493, 1503 (11th Cir. 1990) ("[N]othing in the Sentencing Reform Act or the Federal Rules of Criminal Procedure requires the district court to cite on the record that it has explicitly considered each of the factors listed in 18 U.S.C. § 3553(a).").

We now similarly and squarely hold that nothing in Booker or elsewhere

11

requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.

In this case, the record reflects that the district court adequately and properly considered the § 3553(a) sentencing factors and the advisory Guidelines range. As discussed above, at the sentencing hearing, Scott's counsel argued at length that the factors in § 3553(a) warranted a sentence below the Guidelines range. In imposing a sentence at the low end of the Guidelines range, the district court stated that it had considered "all the obvious things that you would normally take in consideration," particularly "the age of the child."[4] Thus, the district court explicitly considered the circumstances of the offenses. Further, the district court explicitly acknowledged that it had considered Scott's arguments at sentencing and that it had considered the factors set forth in § 3553(a). This statement alone is sufficient in post-Booker sentences.

Accordingly, we conclude that the district court adequately and properly considered the factors in § 3553(a).

---

[4]The circumstances of the offenses, a § 3553(a) factor, involved actions taken by Scott to meet and engage in sexual relations with a four-year-old girl and a six-year-old boy. Moreover, Scott was quite explicit in the activities in which he planned to engage with these children – e-mailing the FBI agent who posed as the father of the children that he would "fill both 'em up in all locations" and wanted to "bang hard" the four-year-old girl.

12

**B.    Reasonableness Review**

Additionally, we conclude that Scott's 135-month sentence is reasonable. As noted above, Scott's sentence was within the Guidelines range, one of the explicit § 3553(a) factors.  18 U.S.C. § 3553(a)(4).  As the <u>Booker</u> Court noted, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  <u>Booker</u>, 125 S. Ct. at 767.  We have described this consultation of the Guidelines as "inescapable." <u>United States v. Crawford</u>, 407 F.3d 1174, 1179 (11th Cir. 2005).

Scott argues that the district court failed to place sufficient weight on his personal characteristics and history.  Scott further argues that a sentence below the advisory Guidelines range would render just punishment and serve as an adequate deterrence in his particular case.  We disagree.

It is clear the district court consulted the Guidelines as advisory and made an accurate computation of the Guidelines range.  The district court also considered the other § 3553(a) factors.  Those other § 3553(a) factors include the nature and circumstances of the offenses, the personal characteristics and history of the defendant, the types of sentences available, and the need for the sentence to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment.

While the district court was particularly impressed by the seriousness of the offenses and the extremely young age of the intended victim, the sentence imposed also reflects the evidence presented by Scott in mitigation. Scott's 135-month sentence was at the low end of the Guidelines range, a range that takes into account Scott's offense conduct, his personal characteristics and history, just punishment, and adequate deterrence.[5] Nothing in the record convinces us the sentence was unreasonable in light of the § 3553(a) factors. We are satisfied under the circumstances of this case the sentence was reasonable. Winingear, 2005 WL 2077087, at *4 (concluding sentence was reasonable in light of the Guidelines range and the other factors outlined in § 3553(a)).

**AFFIRMED.**

---

[5]See 28 U.S.C. § 991(b)(1)(A) (stating that one role of the United States Sentencing Commission is to "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code"); 28 U.S.C. § 994 (outlining the duties of the Sentencing Commission). Since its creation, the Sentencing Commission has adopted, modified, and honed the Guidelines to take account the factors in § 3553(a).