[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13236
Non-Argument Calendar

_____

D.C. Docket No. 0:09-cr-60196-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIFFANY SILAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 14, 2013)

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Tiffay Silas appeals her sentence of 18 months of imprisonment following

the revocation of her supervised release.  18 U.S.C. § 3583.  Silas argues that her

sentence is unreasonable.  We affirm.

In October 2009, Silas pleaded guilty to conspiring to possess a portable credit card "skimming" device.  Id. § 1029(a)(4), (b)(2).  Silas's presentence investigation report described how Silas used the device repeatedly to steal credit card information from customers of a shoe store where she worked.  The report provided that Silas had been referred to a diversionary program in 2008 for uttering a forged check, but the report did not impose any criminal history points for the offense.  The district court sentenced Silas, at the low end of her guideline range, to 12 months and one day of imprisonment, followed by three years of supervised release.

A month after the start of Silas's supervised release, she was arrested for shoplifting and contributing to the delinquency of two minors and, as a result, she was charged with violating her supervised release.  Silas's probation officer charged her with failing to refrain from violating the law by committing a theft offense; failing to refrain from violating the law by contributing to the delinquency of a minor; and failing to notify her probation officer within 72 hours of her arrest.

Silas wavered about whether to admit or deny the charges.  At her initial revocation hearing, Silas denied the violations.  Before her final revocation hearing, Silas agreed to confess to having committed a theft offense and failing to notify her probation officer, but she equivocated about her guilt during the hearing.  Eventually, the district court decided to hold an evidentiary hearing.

2

The United States introduced testimony that Silas transported two minors to a mall in Palm Beach, where the three of them attempted to steal goods from a costume jewelry store. Gina Celentano, the manager of the store, testified that she witnessed Silas and two young girls place store merchandise inside their bags. Celentano said that she called mall security to observe the three females; she confronted Silas and retrieved a pair of earrings from her bag; and both Silas and one of the minors used aliases. Deputy Richard Shehy, of the Sheriff's Office of Palm Beach County, testified that he met Silas in the mall security office, where she proceeded to identify herself using an alias and asked for a notice to appear in court. Shehy also testified that Silas and her two cohorts stole $600 in merchandise from different stores inside the mall.

The United States also introduced testimony from probation officials about their investigation. A probation officer, Teresa Nair, testified that Celentano retrieved from Silas a pair of earrings worth $8.50; Silas had been convicted of retail theft and sentenced to time served, but her two charges of contributing to a minor had been dismissed; and Silas failed to contact her supervising probation officer within 72 hours of her arrest. Tanya Okun, Silas's probation officer, testified that she received an electronic notice about Silas's arrest and contacted Silas. Silas admitted that she did not contact Okun because she was afraid of the consequences, but Silas told Okun that the earrings "happened to fall in [her]

3

purse." Okun authenticated the certified copies of Silas's conviction for retail theft.

Silas called her brother, Lawrence Johnson, to testify and then Silas testified in her defense. Johnson testified that he was inside the jewelry store and did not observe Silas steal any jewelry; Silas refused to leave the store at the requests of a mall security officer and Celentano; Celentano found merchandise inside one of the minors' bags; and Silas owned the items that officers found inside her bag. Johnson could not recall if Silas had used an alias, and Johnson was unaware that Silas had pleaded guilty to retail theft. Silas testified that Celentano acted rude while Silas browsed in the jewelry store, falsely accused her of shoplifting, and found some merchandise inside one of the minors' bags that Silas offered to purchase because she felt responsible for the minor. Silas admitted that she used an alias to avoid having her supervised release revoked based on someone else's misconduct. Silas also admitted having pleaded guilty to retail theft, but contended that she did so to focus on resolving her revocation hearing.

The district court discredited the testimonies of Silas and Johnson and credited the testimonies of the witnesses for the United States. The district court found that Silas had "violated all three conditions of her supervised release"; participated in a "scheme between her and the juveniles to shoplift" like a "modern day Fagin" by transporting the girls to the mall and accompanying them "store to

4

store"; failed to notify her probation officer about her arrest; "hop[ed] that for giving a false name and false date of birth . . . [she could] fool the system so that they would never find out that she had violated her probation"; and "continued to try to avoid responsibility . . . [when] confronted by [her] probation officer." Based on its findings, the district court held Silas responsible as "an aider and abettor" for the value of all merchandise stolen. The district court opined that, "[h]ad [Silas's crime] been charged correctly, . . . [for committing] grand theft, which is a felony, . . . [she would have been sentenced for] a grade B violation," but the district court "[gave] her the benefit of the doubt [and] score[d] [her offense] as a grade C violation," which had an advisory guidelines range between three and nine months of imprisonment. See United States Sentencing Guidelines Manual § 7B1.1(a)(3) (Nov. 2009). Silas objected to the decision to hold her responsible for $600 of merchandise, but the district court overruled the objection.

The district court varied above the advisory guideline range and sentenced Silas to 18 months of imprisonment. After it consulted the sentencing factors, 18 U.S.C. § 3553, the district court determined that the "guideline range [was] not sufficient in this case" based on Silas's refusal to accept responsibility for her conduct, the "pattern of stealing and dishonesty" in her criminal history, and her attempts to evade prosecution by giving a false name to the sheriff's deputy and lying to her probation officer.

5

Silas argues that her sentence is procedurally unreasonable because the district court erroneously held her responsible for committing grand theft based on "mere speculation," imposed a sentence above the guideline range on its mistaken belief that she had committed a Class B violation, and failed to explain its application of the sentencing factors, but Silas's arguments are unavailing. The district court did not clearly err by attributing $600 of merchandise to Silas when the evidence established that Silas knew of and facilitated all the shoplifting. Silas admitted transporting her cohorts to the mall; Celentano witnessed all three women stealing jewelry; Silas claimed responsibility when one cohort was caught; and both Silas and one cohort used aliases. Nor did the district court err in calculating Silas's sentence. In spite of finding that Silas had committed grand theft, the district court scored Silas's offense of retail theft as a Class C violation based on the $8.50 value of the earrings found in her bag. And the district court explained that a sentence within the recommended guideline range failed to account for all the sentencing factors. The district court was not required "to state on the record that it [had] explicitly considered each of the [section] 3553(a) factors or to discuss each of [those] factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

Silas also argues that her sentence is substantively unreasonable, but the district court did not abuse its discretion by varying nine months above the high

6

end of Silas's advisory guideline range to impose a sentence of 18 months of imprisonment.  Undeterred by her previous arrests and sentences, Silas returned to her life of theft and dishonesty and facilitated the same misconduct by younger women.  Based on the evidence at Silas's sentencing hearing about her misconduct and her admitted efforts to evade prosecution, the district court reasonably determined that a sentence above the recommended guideline range would adequately punish Silas for violating the terms of her supervised release, address Silas's lack of respect for the law, and deter her from similar future conduct. Silas's sentence, which is well below the maximum statutory sentence of 24 months, is reasonable.

We **AFFIRM** Silas's sentence.